# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | CASE NO. 1:10-cv-02089-LJO-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | (Docket No. 49) |
| GEORGE MOLAYEM, et al., | **OBJECTIONS DUE:  14 DAYS** |
| Defendants. | |

## I. INTRODUCTION

On October 2, 2012, Plaintiff J & J Sports Productions, Inc. ("Plaintiff") filed the present motion for default judgment against Defendant George Molayem, dba Golden State Mall, and Golden State Mall, LLC, dba Golden State Mall ("Defendants"). (Doc. 12.)  The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

The motion was heard on November 28, 2012.  Thomas Riley, Esq., appeared on behalf of Plaintiff; Defendants made no appearance.  For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED and damages be awarded in the amount of $12,200.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed the instant action on November 9, 2010, against Defendant Cecilia Tolentino ("Tolentino") doing business as D' Gourmet Filipino Cuisine. (Doc. 1.) The parties appeared for a scheduling conference, and discovery was opened on July 15, 2011. (Doc. 24.) On April 30, 2012, the parties filed a stipulation indicating that Plaintiff had agreed to dismiss Defendant Tolentino from the action and that an amended complaint naming a different defendant was to be filed. (Doc. 37.) A First Amended Complaint ("FAC") was filed on May 1, 2012, identifying George Molayem ("Molayem"), individually and doing business as Golden State Mall, and Golden State Mall, LLC as Defendants. (Doc. 39.) Defendant Tolentino was not named in the FAC as a Defendant, and she was subsequently dismissed from the lawsuit. (Doc. 43.)

The FAC against Defendants Molayem and Golden State Mall, LLC, alleges violations of 47 U.S.C. §§ 605 and 553, as well as causes of action for conversion and for violation of the California Business and Professions Code section 17200, *et seq*. The suit is based on Defendants' alleged unlawful interception, receipt, and exhibition of *Firepower: Manny Pacquiao v. Miguel Cotto, WBO Welterweight Championship Fight Program* (the "Program"), which was televised nationwide on November 14, 2009. (Doc. 39, ¶¶ 16.)

According to the FAC, Plaintiff was the exclusive commercial distributor of the Program. (Doc. 39, ¶ 16.) Plaintiff alleges that Defendant Molayem is the managing member of Defendant Golden State Mall, LLC, which owns and operates a commercial establishment doing business as Golden State Mall. (Doc. 39, ¶ 7.) Further, Defendant Molayem is an individual specified on the license for Golden State Mall, and Plaintiff alleges that Defendant Molayem had the obligation to supervise the activities of Golden State Mall, which included the interception and exhibition of Plaintiff's Program. (Doc. 39, ¶ 10.) Plaintiff alleges that on November 14, 2009, Defendant Molayem either specifically directed employees of Golden State Mall to unlawfully intercept the broadcast of the Program at Golden State Mall, or that the actions of the employees of Golden State Mall are directly imputable to Defendants Molayem by virtue of his responsibility for the actions of Golden State Mall. (Doc. 39, ¶ 11.) Plaintiff asserts that the unlawful broadcast of the Program resulted in increased profits for Golden State Mall. (Doc. 39, ¶ 13.)

Count I of the complaint asserts a violation of 47 U.S.C. § 605 (Unauthorized Publication or Use of Communications) alleging that Defendants knowingly intercepted, received, and exhibited the Program for purposes of direct or indirect commercial advantage or private financial gain. (Doc. 39, ¶ 19.) Plaintiff seeks $100,000 in statutory damages as well as attorney's fees and costs. (Doc. 39, ¶ 24.) Count II alleges a violation of 47 U.S.C. § 553 (Unauthorized Reception of Cable Services) based upon the same allegations. (Doc. 39, ¶¶ 25-29.) Plaintiff requests $60,000 in statutory damages, as well as attorney's fees and costs. (Doc. 39, ¶ 29.) Count III states a claim for conversion alleging that Defendants tortiously obtained possession of the Program and wrongfully converted it for their own benefit. (Doc. 39, ¶¶ 30-33.) As to Count III, Plaintiff seeks compensatory damages, exemplary damages and punitive damages. (Doc. 39, ¶ 33.) Count IV of the complaint alleges a violation of the California Business & Professions Code § 17200, *et. seq*. (Doc. 39, ¶¶ 34-43.) As to Count IV, Plaintiff seeks restitution, declaratory relief, injunctive relief, attorney's fees, and costs of suit. (Doc. 39, ¶¶ 42-43.)

On May 31, 2012, each summons as to Defendants Golden State Mall, LLC and George Molayem were returned showing that service of each summons and the complaint were executed on May 22, 2012. (Docs. 44, 45.) Defendants failed to respond to the complaint by the June 12, 2012, due date. On June 13, 2012, pursuant to Plaintiff's request, the Clerk entered default against Defendants. (Docs. 47, 48.) On October 2, 2012, Plaintiff filed this motion for default judgment against Defendants. (Doc. 49.) Defendants did not oppose the motion.

### III. DISCUSSION

**A.   Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered as follows:

> By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to:
>
> (A)   conduct an accounting;
> (B)   determine the amount of damages;

  (C) establish the truth of any allegation by evidence; or
  (D) investigate any other matter.

Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Dundee Cement Co. v. Highway Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

**B. Plaintiff is Entitled to Default Judgment**

The summonses and FAC were served on Defendants on May 22, 2012. (Docs. 44, 45.) Executed summonses were filed on May 31, 2012. (Docs. 44, 45.) Defendant failed to respond to the complaint or otherwise appear in the action. The Clerk of the Court entered default against Defendants on June 13, 2012. Defendants are not infants or incompetent persons, and are not in the military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. (Doc. 49-2, ¶ 3.) As discussed below, the *Eitel* factors favor the entry of default judgment against Defendants.

  **1. The *Eitel* Factors Weigh In Favor of Default Judgment**

    **a. Prejudice to Plaintiff if Default Judgment not Granted**

If default judgment is not entered, Plaintiff will effectively be denied a remedy until such time as Defendants participate and make an appearance in the litigation – which may never occur. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

///

///

### b. Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The next relevant *Eitel* factors include an evaluation of the merits of the substantive claims pled in the complaint as well as the general sufficiency of the complaint. In weighing these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).

Plaintiff seeks default judgment pursuant to 47 U.S.C. § 605.[1] Section 605(a) makes it unlawful for an unauthorized person to "receive or assist in receiving any interstate or foreign communication . . . for his own benefit or for the benefit of another not entitled thereto." Plaintiff alleges that it was granted the exclusive nationwide commercial distribution of the Program, that Defendants, with knowledge that the Program was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, did unlawfully intercept, receive, publish, divulge, display, and/or exhibit the Program at their commercial establishment, i.e., Golden State Mall. (Doc. 39, ¶¶ 17-19.) Plaintiff further alleges that the unauthorized interception and exhibition of the Program was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain. (Doc. 39, ¶ 20.) The allegations adequately set forth a claim under 47 U.S.C. § 605.

Plaintiff also seeks default judgment on its claim for conversion. Under California law, conversion is the wrongful exercise of dominion over the property of another. The elements of conversion are, "the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1581 (2005) (internal citation and quotation marks omitted); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*,

---

[1] As Plaintiff has requested default judgment and seeks damages pursuant to Section 605 and the common law conversion claim only, the claims under 47 U.S.C. § 553 and the California Business and Professions Code § 17200 are not discussed and do not form the basis for the recommendation herein.

958 F.2d 896, 906 (9th Cir. 1992). "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant." *Gilman v. Dalby*, 176 Cal. App. 4th 606, 615 n.1 (2009). Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion. *See Don King Prods./Kingvision v. Lovato*, 911 F. Supp. 419, 423 (N.D. Cal. 1995) (applying California law and finding misappropriation of intangible property without authority from owner is conversion); *see also DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189 (E.D. Cal. 2005) (concluding that the right to distribute programming via satellite constituted a right to possession of personal property for purposes of a conversion claim under California law).

Here, Plaintiff alleges it was granted the exclusive domestic commercial exhibition licensing rights to the Program, and thus had the right to possession of the property at the time of the conversion. Plaintiff alleges that Defendants did not legally purchase the Program, and that the exhibition of the Program on November 14, 2009, constituted conversion by a wrongful act or disposition of property rights because it deprived Plaintiff of the commercial license fee to which it was entitled to receive. (Doc. 39, ¶ 32.) These allegations adequately sets forth a sufficient claim for conversion.

As the claims were adequately pled in the complaint, and because the complaint is generally sufficient, these *Eitel* factors weigh in favor of default judgment.

        **c.**     **Sum of Money at Stake**

The fourth *Eitel* factor, the sum of money at stake, weighs in favor of default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). Here, Plaintiff is seeking a default judgment within the parameters of the statutory damages allowed by Congress. As Congress has provided a specific range of damages, a requested amount within that range is not unreasonable on its face or in light of Defendants' conduct. Therefore, this factor does not weigh against default judgment.

///

///

      **d.**      **Dispute Concerning Material Facts**

With regard to this factor, no genuine issues of material fact are likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Defendants have submitted nothing to contradict the well-pled allegations. Accordingly, this factor favors entry of default judgment.

      **e.**      **Default due to Excusable Neglect**

There is no evidence that Defendants' failure to participate in the litigation is due to excusable neglect. Thus, this factor does not weigh against granting default judgment.

      **f.**      **Strong Policy Favoring Decision on the Merits**

This factor inherently weighs strongly against awarding default judgment in every case. In the aggregate, however, this factor is outweighed in consideration of the other applicable factors.

      **g.**      **Conclusion**

As discussed above, consideration of the *Eitel* factors weighs in favor of granting default judgment. The Court, therefore, recommends that default judgment be granted.

**C.**      **Plaintiff is Entitled to an Award of $12,200 in Damages**

A plaintiff is required to prove all damages sought in the complaint. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992). In addition, any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint. Fed. R. Civ. P. 54(c). If the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

      **1.**      **Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II)**

In its motion, Plaintiff seeks default judgment and an award of damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) (statutory damages) and 47 U.S.C. § 605(e)(3)(C)(ii) (enhanced statutory damages) in the amount of $110,000 against Defendant for unlawfully intercepting, receiving, and exhibiting the Program on November 14, 2009, at the Golden State Mall. Plaintiff also seeks damages in the amount of $2,200 for its state law conversion claim.

Pursuant to Section 605(a), "no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission of reception. . . ." Those who violate this Section are subject to the following civil penalty:

> [T]he party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4)[2] of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff attests that it is a closed-circuit distributor of sports and entertainment programming that purchased and retained the exclusive commercial exhibition licensing rights to the Program. (Doc. 50, Gagliardi Decl., ¶ 3.) Plaintiff marketed the sub-licensing (commercial exhibition) rights in the Program to its commercial customers. (*Id*.) Plaintiff contends that persistent signal piracy of its programming costs the company, its customers, and the community millions of dollars annually. (*Id*. at ¶ 12.) Plaintiff believes that the continued signal piracy is caused, in part, from the perceived lack of consequences (including nominal or minimal damage awards by the courts who hear its cases) for such unlawful interception and exhibition by the commercial signal pirates. (*Id*.) As such, Plaintiff requests that it be awarded the maximum allowance for statutory violations, totaling $10,000.

The facts before the Court indicate that Defendants' establishment, the Golden State Mall, had a maximum capacity of 80 people in the area where the Program was displayed. (Doc. 49-3, p. 2.) Gilbert Tate, Plaintiff's investigator, noted that display of the Program took place on a 32-inch flat screen television, with smaller televisions hanging from mounts. (*Id*.) Mr. Tate conducted three head-counts where the Program was displayed at the Golden State Mall, with thirty-five people in the first count, forty people in the second count, and forty people in the last count. (*Id.*)

---

[2] Paragraph 4 relates to persons who manufacture, assemble, modify, import, export, sell, or distributed any device or equipment knowing that the equipment is primarily of assistance in the unauthorized description of satellite cable programming. Plaintiff does not assert that Paragraph 4 is applicable in this case.

The amount of damages awarded should be in an amount that is adequate to deter this Defendant and others from committing similar acts in the future.  Therefore, the Court recommends that statutory damages be awarded pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $8,000.

**2.     Enhanced Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(ii)**

Plaintiff contends that significant enhanced statutory damages should be awarded under Section 605(e)(3)(C)(ii) because Defendants' actions were willful and done for a commercial advantage.  Section 605(e)(3)(C)(ii) provides that where "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." Emphasizing the need for deterrence as to these Defendants and others, Plaintiff requests that it be awarded $100,000 in enhanced statutory damages.

Here, several factors militate against a substantial award of enhanced statutory damages. There is no evidence that Defendants (1) advertised the broadcast of the Program to entice a larger crowd, (2) charged a cover to enter the establishment, or (3) charged a premium for food and drinks on the night the broadcast was shown.  Further, the headcounts during the Program indicate approximately forty people were present in the establishment, approximately one-half of the establishment's capacity in the viewing area. (Doc. 49-3, p. 2.)  Moreover, Defendants have not been shown to be  repeat offenders with regard to signal piracy.

Plaintiff contends that the courts have placed undue weight on the promotion of the program rather than the exhibition of the program, arguing that pirates do not generally advertise that they will exhibit programming unlawfully, do not generally increase the price of food and drinks, and do not generally charge a cover so as to undercut establishments who do broadcast the program lawfully. (Doc. 50, ¶¶ 14-17.)  The Court has considered these arguments and finds that there is an impact based on Defendants' conduct and limited enhanced damages will produce the appropriate deterrent effect.  There is no evidence that Defendants' financial resources would require a large judgment to achieve the desired deterrent effect.  However, the Court is also mindful that minimal damage

9

awards may result in a perceived lack of consequences for signal piracy. (*See* Doc. 50, ¶¶ 11-13.) Considering these factors, the Court recommends that enhanced statutory damages be awarded pursuant to Section 605(e)(3)(C)(ii) in the amount of $2,000.

**3.     Damages for Conversion**

Plaintiff seeks $2,200 in conversion damages – the value of the property at the time of the conversion. The rate card for the Program at an establishment with a seating capacity of zero to 100, which applies to Defendants' establishment that accommodates 80 in the area where the Program was displayed, indicates the sub-license fee for the Program would have been $2,200.[3] (Doc. 50, ¶ 8, Exh. 1.)  Thus, Plaintiff is entitled to damages for conversion in the amount of $2,200.

## IV.  RECOMMENDATION

Based on a consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS as follows:

1. Plaintiff's motion for default judgment be GRANTED;
2. Defendants George Molayem, individually, and doing business as Golden State Mall, and Golden State Mall, LLC, un unknown business entity doing business as Golden State Mall be held jointly and severally liable for the following damages:
   a. $8,000 statutory damages for violation of 47 U.S.C. § 605;
   b. $2,000 enhanced statutory damages for violation of 47 U.S.C. § 605; and
   c. $2,200 for the tort of conversion.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C.

---

[3] The rate card indicates the amount Plaintiff charges an establishment to sub-license and purchase the broadcast the Program. (Doc. 50, ¶ 8, Exh. 1.) The rates charged are based upon the capacity of the establishment. In this instance, for an establishment with a capacity of 80 people, the rate to sub-license and broadcast the Program is $2,200. (*Id.*)

§ 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   November 28, 2012**                              /s/ Sheila K. Oberto
                                                                                                           UNITED STATES MAGISTRATE JUDGE